UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
BOODRAM DUDNAUTH, individually and on behalf of all others similarly situated,

        Plaintiff,

-against-

A.B.C. CARPET & HOME, INC. and ABC HOLDCO 1 LLC d/b/a ABC CARPET and HOME, PAULETTE COLE, DINESH SEWNAUTH and SYLVESTER CYRAN, as individuals,

        Defendants.
-------------------------------------------X

**COLLECTIVE ACTION COMPLAINT**

**JURY TRIAL REQUESTED**

Plaintiff, **BOODRAM DUDNAUTH**, individually and on behalf of all others similarly situated (hereinafter referred to as "Plaintiff") by their attorneys at Helen F. Dalton & Associates, P.C., alleges, upon personal knowledge as to himself and upon information and belief as to other matters, as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff, through undersigned counsel, bring this action against **A.B.C. CARPET & HOME, INC. and ABC HOLDCO 1 LLC d/b/a ABC CARPET and HOME, PAULETTE COLE, DINESH SEWNAUTH and SYLVESTER CYRAN, as individuals,** (collectively hereinafter, "Defendants") to recover damages for Defendants' egregious violations of state and federal wage and hour laws arising out of Plaintiff's employment with the Defendants located at 888 Broadway, New York, NY 10003.

2. Plaintiff also complains pursuant to the New York State Human Rights Law, New York State Executive Law §§ 296 *et seq.* ("NYSHRL") and seeks damages to redress the injuries Plaintiff has suffered as a result of being discriminated on the basis of his disability by Defendant ABC HOLDCO 1 LLC.

3. As a result of the violations of Federal and New York State labor laws delineated below, Plaintiff seeks compensatory damages and liquidated damages in an amount exceeding $100,000.00. Plaintiff also seeks interest, attorneys' fees, costs, and all other legal and equitable remedies this Court deems appropriate.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to the FLSA, 29 U.S.C. §216 and 28 U.S.C. §1331.
5. This Court has supplemental jurisdiction over Plaintiff's other state law claims pursuant to 28 U.S.C. §1367.
6. Venue is proper in the SOUTHERN District of New York pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.
7. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§2201 & 2202.

## THE PARTIES
### Plaintiff

8. Plaintiff BOODRAM DUDNAUTH residing at Jamaica, NY 11435 was employed by A.B.C. CARPET and HOME INC. d/b/a ABC CARPET and HOME from in or around 1984 until in or around October 2021 and by ABC HOLDCO 1 LLC d/b/a ABC CARPET and HOME, from in or around November 2021 until in or around June 2022.

### Corporate Defendants

9. Defendant A.B.C. CARPET and HOME INC. d/b/a ABC CARPET and HOME is a New York domestic business corporation, organized under the laws of the State of New York with a principal executive office located 888 Broadway, New York, NY 10003.
10. Defendant, ABC HOLDCO 1 LLC d/b/a ABC CARPET and HOME, is a New York domestic business corporation, organized under the laws of the State of New York with a principal executive office located 888 Broadway, New York, NY 10003.

2

## Individual Defendants

### Paulette Cole

11. Upon information and belief, Defendant PAULETTE COLE is the President and owner of A.B.C. CARPET and HOME INC. d/b/a ABC CARPET and HOME.

12. Upon information and belief, Defendant PAULETTE COLE retains a controlling interest at ABC HOLDCO 1 LLC d/b/a ABC CARPET and HOME.

13. Upon information and belief, Defendant PAULETTE COLE is an agent of A.B.C. CARPET and HOME INC. and ABC HOLDCO 1 LLC d/b/a ABC CARPET and HOME.

14. Upon information and belief, PAULETTE COLE is responsible for overseeing all daily operations of A.B.C. CARPET and HOME INC. and ABC HOLDCO 1 LLC d/b/a ABC CARPET and HOME.

15. Upon information and belief, PAULETTE COLE has power and authority over all the final personnel decisions of A.B.C. CARPET and HOME INC. and ABC HOLDCO 1 LLC d/b/a ABC CARPET and HOME.

16. Upon information and belief, PAULETTE COLE has the power and authority over all final payroll decisions of A.B.C. CARPET and HOME INC. and ABC HOLDCO 1 LLC d/b/a ABC CARPET and HOME, including the Plaintiff.

17. Upon information and belief, PAULETTE COLE has the exclusive final power to hire the employees of A.B.C. CARPET and HOME INC. and ABC HOLDCO 1 LLC d/b/a ABC CARPET and HOME, including the Plaintiff.

18. Upon information and belief, PAULETTE COLE has exclusive final power over the firing and terminating of the employees of A.B.C. CARPET and HOME INC. and ABC HOLDCO 1 LLC d/b/a ABC CARPET and HOME, including Plaintiff.

19. Upon information and belief, PAULETTE COLE is responsible for determining, establishing, and paying the wages of all employees of A.B.C. CARPET and HOME INC. and ABC HOLDCO 1 LLC d/b/a ABC CARPET and HOME, including the Plaintiff, setting his work schedules, and maintaining all their employment records of the business.

20. Accordingly, at all relevant times hereto, Defendant PAULETTE COLE was Plaintiff's employer within the meaning and the intent of the FLSA, and the NYLL.

**Dinesh Sewnauth and Sylvester Cyran**

21. Upon information and belief, Defendants DINESH SEWNAUTH AND SYLVESTER CYRAN are both Managers and Vice-Presidents of A.B.C. CARPET and HOME INC. and ABC HOLDCO 1 LLC d/b/a ABC CARPET and HOME.

22. Upon information and belief, Defendants DINESH SEWNAUTH AND SYLVESTER CYRAN are responsible for overseeing all daily operations of A.B.C. CARPET and HOME INC. and ABC HOLDCO 1 LLC d/b/a ABC CARPET and HOME.

23. Upon information and belief, Defendants DINESH SEWNAUTH AND SYLVESTER CYRAN have power and authority over all the final personnel decisions of A.B.C. CARPET and HOME INC. and ABC HOLDCO 1 LLC d/b/a ABC CARPET and HOME.

24. Upon information and belief, Defendants DINESH SEWNAUTH AND SYLVESTER CYRAN have the power and authority over all final payroll decisions of ABC HOLDCO 1 LLC d/b/a ABC CARPET and HOME, including the Plaintiff.

25. Upon information and belief, Defendants DINESH SEWNAUTH AND SYLVESTER CYRAN have the power to hire the employees of A.B.C. CARPET and HOME INC. and ABC HOLDCO 1 LLC d/b/a ABC CARPET and HOME, including the Plaintiff.

26. Upon information and belief, Defendants DINESH SEWNAUTH AND SYLVESTER CYRAN have power over the firing and terminating of the employees of A.B.C. CARPET and HOME INC. and ABC HOLDCO 1 LLC d/b/a ABC CARPET and HOME, including Plaintiff.

27. Upon information and belief, Defendants DINESH SEWNAUTH AND SYLVESTER CYRAN are responsible for determining, establishing, and paying the wages of all employees of A.B.C. CARPET and HOME INC. and ABC HOLDCO 1 LLC d/b/a ABC CARPET and HOME, including the Plaintiff, setting his work schedules, and maintaining all their employment records of the business.

28. Accordingly, at all relevant times hereto, Defendants DINESH SEWNAUTH AND SYLVESTER CYRAN were Plaintiff's employer within the meaning and the intent of the FLSA, and the NYLL.

29. At all times relevant hereto, Defendants acted as a single employer in general and a joint employer with respect to Plaintiff, as Defendants held out Plaintiff as employee of both

    A.B.C. CARPET and HOME INC. and ABC HOLDCO 1 LLC d/b/a ABC CARPET and HOME.

30. Both Corporate entities employed the same employees, including Plaintiff, performed work on the same job sites, and were both responsible for issuing Plaintiff his wages.

31. The Corporate entities functioned as a single integrated enterprise during Plaintiff's employment by Defendants

32. At all times relevant to the allegations contained in the complaint, Corporate Defendants were, and are, enterprises engaged in interstate commerce within the meaning of the FLSA in that A.B.C. CARPET and HOME INC. and ABC HOLDCO 1 LLC d/b/a ABC CARPET and HOME (i) has purchased goods, tools, and supplies for its business through the streams and channels of interstate commerce, and has had employees engaged in interstate commerce, and/ or in the production of goods intended for commerce, and handle, sell and otherwise work with goods and material that have been moved in or produced for commerce by any person: and (ii) has had annual gross volume of sales of not less than $500,000.00.

## RELEVANT STATUTORY PERIOD

33. Under the FLSA and NYLL, Plaintiffs' federal and state law claims are subject to statute of limitations periods of 3 and 6 years from the date of the filing of the Complaint, respectively. As this Complaint is filed in March 2023, the relevant statutory period for Plaintiff's claims asserted herein encompasses the entirety of the period spanning March2017 through the present ("relevant statutory period.").

## FACTUAL ALLEGATIONS
### i.    Wage and Hour Allegations
*Employment at A.B.C. CARPET and HOME INC.*

34. Plaintiff BOODRAM DUDNAUTH was employed by A.B.C. CARPET and HOME INC., as a stocker while performing related miscellaneous duties for the Defendants, from in or around 1984 until in or around October 2021.

35. Although Plaintiff was given the title of "manager," Plaintiff only performed manual labor such as organizing rugs and stock materials at the store, during his employment with the Defendants. As such, Plaintiff was employed as a manual laborer.

5

36. Plaintiff BOODRAM DUDNAUTH regularly worked five (5) to six (6) days per week during his employment at A.B.C. CARPET and HOME INC.
37. During the relevant statutory period, Plaintiff worked a schedule of shifts beginning at approximately 9:30 a.m. each workday and regularly ending at approximately 7:00 a.m. each workday, 5 to 6 days per week.
38. Thus, Plaintiff BOODRAM DUDNAUTH was regularly required to work approximately 47.5 to 57 hours each week, during the relevant statutory period.
39. Plaintiff BOODRAM DUDNAUTH was paid by Defendants a flat hourly rate of approximately:
    i. $21.00 per hour for all hours worked from in or around February 2017 until in or around December 2018; and
    ii. $23.50 per hour for all hours worked from in or around January 2019 until in or around October 2021.
40. Although Plaintiff regularly worked 47.5 to 57 hours or more hours each week during the relevant statutory period, the Defendants did not pay Plaintiff at a wage rate of time and a half (1.5) for his hours regularly worked over forty (40) in a work week, a blatant violation of the overtime provisions contained in the FLSA and NYLL.
41. Additionally, Defendants paid Plaintiff BOODRAM DUDNAUTH on a bi-weekly basis from in or around from in or around February 2017 until in or around October 2021, failing to timely pay Plaintiff for his first week of wages and thus violated the frequency of pay requirements of NYLL § 191 by failing to pay him on a weekly basis.
42. As a manual worker, Defendants were required to pay Plaintiff every seven days and failed to timely pay Plaintiff his wages each bi-weekly period.

### *Employment at A.B.C. CARPET and HOME INC.*

43. Plaintiff BOODRAM DUDNAUTH was employed by ABC HOLDCO 1 LLC d/b/a ABC CARPET and HOME, as a stocker while performing related miscellaneous duties for the Defendants, from in or around November 2021 until in or around June 2022.
44. Although Plaintiff was given the title of "manager," Plaintiff only performed manual labor such as organizing rugs and stock materials at the store, during his employment with the Defendants. As such, Plaintiff was employed as a manual laborer.

45. Plaintiff BOODRAM DUDNAUTH regularly worked five (5) days per week during his employment with the Defendants.

46. Plaintiff BOODRAM DUDNAUTH regularly worked forty-three (43) hours week, during his employment with the Defendants.

47. Plaintiff BOODRAM DUDNAUTH was paid by Defendants a flat hourly rate of approximately $29.00 per hour for all hours worked from in or around November 2021 until in or around June 2022.

48. Although Plaintiff regularly worked forty-three (43) hours or more hours each week from in or around November 2021 until in or around June 2022, the Defendants did not pay Plaintiff at a wage rate of time and a half (1.5) for his hours regularly worked over forty (40) in a work week, a blatant violation of the overtime provisions contained in the FLSA and NYLL.

49. Additionally, Defendants paid Plaintiff BOODRAM DUDNAUTH on a bi-weekly basis from in or around from in or around November 2021 until in or around June 2022, failing to timely pay Plaintiff for his first week of wages and thus violated the frequency of pay requirements of NYLL § 191 by failing to pay him on a weekly basis.

50. As a manual worker, Defendants were required to pay Plaintiff every seven days and failed to to timely pay Plaintiff his wages each bi-weekly period.

51. Upon information and belief, Defendants willfully failed to post notices of the minimum wage and overtime wage requirements in a conspicuous place at the location of their employment as required by both the NYLL and the FLSA.

52. Upon information and belief, Defendants willfully failed to keep payroll records as required by both NYLL and the FLSA.

53. Additionally, Defendants willfully failed to provide Plaintiff with a written notice, in English, of his applicable regular rate of pay, regular pay day, and all such information as required by NYLL §195(1).

54. Upon information and belief, Defendants willfully failed to provide Plaintiff with any wage statements, upon each payment of his wages, as required by NYLL §195(3).

55. As a result of these violations of Federal and New York State labor laws, Plaintiff seeks compensatory damages and liquidated damages in an amount exceeding $100,000.00.

Plaintiff also seeks statutory interest, attorneys' fees, costs, and all other legal and equitable remedies this Court deems appropriate.

### ii. Age Discrimination and Disability Discrimination Allegations

56. In or around April 2022, Plaintiff went out on medical leave due to dizziness, feeling of imbalance and weakness.
57. On the same day, Plaintiff went to the emergency room and called his boss "Steve," a manager of the Defendants, to inform him that Plaintiff could not go to work because of these issues.
58. Plaintiff underwent some tests – CAT Scan and MRI to determine the route of his issues.
59. In or around May 2022, after being referred to a specialist, Plaintiff was put on medication due to blockage in leg potentially causing dizziness/imbalance, also diagnosed Plaintiff with long-term knee and back pain from years of manual labor on the job. Plaintiff was further advised to complete bed rest for the next two weeks.
60. Due to Plaintiff's persistent pain, a second and third Doctor's Note was issued by his specialist on May 25, 2022 and May 28, 2022, respectively, advising that Plaintiff was physically unable to return to work due to his medical condition.
61. However, without any warning, Defendants suddenly terminated Plaintiff on or around June 6, 2022, despite being aware of Plaintiff's medical condition and being provided documentation of his condition on a regular basis.
62. Defendants told Plaintiff that he would no longer be employed by Defendants and sent him a separation agreement, which Plaintiff refused to sign.
63. Despite this, Defendants called Plaintiff repeatedly after his termination, insisting that he sign the agreement.
64. Despite being already unlawfully terminated due to his disability, on June 20, 2022, a fourth Doctor's Note was issued by his specialist stating that the Plaintiff could return to work on July 4, 2022.
65. Each prior note indicated that Plaintiff was not ready to return to work due to aforementioned health issues and that Plaintiff is to be re-evaluated again in a few weeks; all doctor's notes were provided to Defendants.

66. Defendants improperly terminated Plaintiff as a result of his disabilities and medical condition.
67. Defendants terminated Plaintiff rather than accommodate his medical leave for his disability, which had been well documented.
68. Defendants were aware of Plaintiff's condition, his required medical leave and were regularly provided documentation of such and still chose to unlawfully terminate Plaintiff rather than await his imminent return to the workplace.
69. Plaintiff has felt humiliated, degraded, emotionally distressed, devastated, and shocked at Defendants' blatant discrimination on the basis of his disabilities.
70. As a result of Defendants' discriminatory treatment, Plaintiff has suffered and will continue to suffer future loss of income/wages, loss of salary, loss of employment, special damages, inconvenience, loss of bonuses, benefits and other compensation which such employment entails, loss of enjoyment of life, interference with his ability to mitigate his damages, depression, anxiety, fear, anger, emotional pain and suffering, and non-pecuniary losses.
71. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages as against all Defendants, jointly and severally.

## COLLECTIVE ACTION ALLEGATIONS

72. Plaintiff brings this action on behalf of themselves, and other employees similarly situated as authorized under the FLSA, 29 U.S.C. § 216(b). The employees similarly situated are hereafter, the "Collective Class."
73. Collective Class: All persons who are or have been employed by the Defendants as manual laborers or misclassified as managers or any other similarly titled personnel with substantially similar job requirements and pay provisions, who were performing the same sort of functions for Defendants, other than the executive and management positions, who have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay required overtime wages.

74. Upon information and belief, Defendants employed at least 25 to 50 employees or more during the relevant statutory period who Defendants subject(ed) to similar unlawful payment structures that violated applicable law.

75. Defendants suffered and permitted Plaintiff - and the Collective Class - to regularly work more than forty hours per week without appropriate overtime compensation.

76. Defendants' unlawful conduct herein has been widespread, repeated, and consistent.

77. Defendants had knowledge that the Plaintiff and the Collective Class regularly performed work requiring overtime pay.

78. Defendants' conduct as set forth in this Complaint, was willful and in bad faith - and has caused significant damages to Plaintiff, as well as the Collective Class.

79. Defendants are liable under the FLSA for failing to properly compensate Plaintiff, and the Collective Class, and as such, notice should be sent to the Collective Class. There are numerous similarly situated current and former employees of Defendants who have been denied overtime pay and proper minimum wage pay in violation of the FLSA and NYLL, who would benefit from the issuance of a Court-supervised notice of the present lawsuit, and the opportunity to join the present lawsuit. Those similarly situated employees are known to Defendants and are readily identifiable through Defendants' records.

80. The questions of law and fact common to the putative class predominate over any questions affecting only individual members.

81. The claims of Plaintiff are typical of the claims of the whole putative class.

82. Plaintiff and their counsel will fairly and adequately protect the interests of the putative class.

83. A collective action is superior to other available methods for the fair and efficient adjudication of this controversy.

## FIRST CAUSE OF ACTION
### Overtime Wages Under The Fair Labor Standards Act

84. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

85. Plaintiff has consented in writing to be a party to this action, pursuant to 29 U.S.C. §216(b) *et seq*.

86. At all times relevant to this action, Plaintiff was engaged in interstate commerce and/or was engaged in the production of goods for/through the channels of interstate commerce within the meaning of 29 U.S.C. §§206(a) and 207(a), *et seq*.

87. At all times relevant to this action, Defendants were employers engaged in commerce or the production of goods for commerce within the meaning of 29 U.S.C. §§206(a) and 207(a).

88. Defendants willfully failed to pay Plaintiff's overtime wages for all hours regularly worked in excess of forty (40) hours per week at a wage rate of one and a half (1.5) times the regular wage, to which Plaintiff was entitled under 29 U.S.C. §§206(a) in violation of 29 U.S.C. §207(a)(1).

89. Defendants' violations of the FLSA as described in this Complaint have been willful and intentional. Defendants have not made any good faith effort to comply with their obligations under the FLSA with respect to the compensation of the Plaintiff.

90. Due to Defendants' FLSA violations, Plaintiff is entitled to recover from Defendants, jointly and severally, his unpaid wages and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest, pursuant to the FLSA, specifically 29 U.S.C. §216(b).

## SECOND CAUSE OF ACTION

### Overtime Wages Under New York Labor Law

91. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

92. At all times relevant to this action, Plaintiff was employed by Defendants within the meaning of New York Labor Law §§2 and 651.

93. Defendants failed to pay Plaintiff's overtime wages for hours worked in excess of forty hours per week at a wage rate of one and a half (1.5) times the regular wage to which Plaintiff were entitled under New York Labor Law §652, in violation of 12 N.Y.C.R.R. 137-1.3, *et seq*.

94. Due to Defendants' New York Labor Law violations, Plaintiff are entitled to recover from Defendants, jointly and severally, their unpaid overtime wages and an amount equal to their unpaid overtime wages in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest in accordance with NY Labor Law §198(1-a).

## THIRD CAUSE OF ACTION
### Violation of Frequency of Pay Under New Yor Labor Law

95. Plaintiff re-alleges and incorporates by reference the foregoing allegations as if set forth fully and again herein.

96. Defendants willfully violated the rights of Plaintiff by failing to pay his wages owed on a weekly basis in which his wages were earned, in violation of New York Labor Law § 191.

97. Defendants' failure to pay wages on the statutorily prescribed schedule was willful, and lacked a good faith basis, within the meaning of New York Labor Law § 198, § 663 and supporting regulations.

98. Due to defendants' New York Labor Law violations, Plaintiff is entitled to recover from defendants liquidated damages, interest, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to New York Labor Law § 198 and § 663(1).

## FOURTH CAUSE OF ACTION
### Violation of the Wage Statement Requirements of the New York Labor Law

99. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

100. Defendants failed to provide Plaintiff with wage statements, upon each payment of his wages, as required by NYLL §195(3).

101. Defendants are liable to Plaintiff in the amount of $5,000.00 together with costs and attorneys' fees.

## FIFTH CAUSE OF ACTION

**Violation of the Notice and Recordkeeping Requirements of the New York Labor Law**

102. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

103. Defendants failed to provide Plaintiff with a written notice, in English (Plaintiff's primary language), of their rate of pay, regular pay day, and such other information as required by NYLL §195(1).

104. Defendants are liable to Plaintiff in the amount of $5,000.00, together with costs and attorneys' fees.

## SIXTH CAUSE OF ACTION FOR DISCRIMINATION
### Under New York State Executive Law

105. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

106. New York State Executive Law § 296 provides that, "1. It shall be unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's . . . age, sex/gender, disability . . . to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

107. Defendants violated the above-stated law.

108. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

109. Defendants had no good faith business justification for the actions against Plaintiff as described herein.

110. As a result of the acts and conduct complained of herein, Plaintiff has suffered, and will continue to suffer, future loss of income/wages, loss of salary, loss of employment, special damages, inconvenience, loss of bonuses, benefits and other compensation which such employment entails, loss of enjoyment of life, interference with his ability to mitigate his damages, depression, anxiety, fear, anger, emotional pain and suffering, exacerbated physical illness and injuries and other non-pecuniary losses.

111. Defendants' conduct was malicious, willful and conducted with full knowledge of the law.

112. Plaintiff is entitled to the maximum amount allowed under this statute/law.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully request that judgment be granted:

a. Declaring Defendants' conduct complained herein to be in violation of the Plaintiff's rights under the FLSA, the New York Labor Law, and its regulations;

b. Declaring that Defendants engaged in unlawful employment practices prohibited by the NYSHRL, and NYLL in that Defendants discriminated against Plaintiff on the basis of his disability;

c. Awarding Plaintiff punitive damages;

d. Awarding Plaintiff unpaid overtime wages;

e. Awarding Plaintiff's unpaid wages for Defendants' failure to timely pay Plaintiffs' wages;

f. Awarding Plaintiff liquidated damages pursuant to 29 U.S.C. §216 and New York Labor Law §§198(1-a), 663(1);

g. Awarding Plaintiff prejudgment and post-judgment interest;

h. Awarding Plaintiff the costs of this action together with reasonable attorneys' fees; together with such further relief as this court deems necessary and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demand a trial by jury on all questions of fact raised by the complaint.

Dated:  March 3, 2023
         Kew Gardens, NY

*Roman Avshalumov*
Roman Avshalumov (RA 5508)
Helen F. Dalton & Associates, P.C.
80-02 Kew Gardens Road, Suite 601
Kew Gardens, New York 11415
Telephone: 718-263-9591

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BOODRAM DUDNAUTH, individually and on behalf of all others similarly situated,

Plaintiff,

-against-

A.B.C. CARPET and HOME INC. and ABC HOLDCO 1 LLC d/b/a ABC CARPET and HOME, PAULETTE COLE, DINESH SEWNAUTH and SYLVESTER CYRAN, as individuals,

Defendants,

## COLLECTIVE ACTION COMPLAINT

*Jury Trial Demanded*

**HELEN F. DALTON & ASSOCIATES, P.C.**
*Attorneys for the Plaintiff*
80-02 Kew Gardens Road
Suite 601
Kew Gardens, New York 11415
Phone: (718) 263-9591
Fax: (718) 263-9598

To:

Via Personal Service and Secretary of State:
**A.B.C. CARPET and HOME INC. (DOS ID:1482777)**
888 Broadway, New York, NY 10003
**ABC HOLDCO 1 LLC d/b/a ABC CARPET and HOME (DOS ID:6340834)**
c/o Robinson Brog Leinwand Greene Genovese & Gluck P.C.
Attn: Leonard B. Nathanson, 875 Third Avenue, 9th Floor, New York, NY 10022
888 Broadway, New York, NY 10003

**PAULETTE COLE**
888 Broadway, New York, NY 10003
**DINESH SEWNAUTH**
888 Broadway, New York, NY 10003
**SYLVESTER CYRAN**
888 Broadway, New York, NY 10003