UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BOODRAM DUDNAUTH, *on behalf of himself and all others similarly situated*,

                                    Plaintiff,

– *against* –

A.B.C. CARPET & HOME INC., ABC HOLDCO 1 LLC, PAULETTE COLE, DINESH SEWNAUTH, *and* SYLVESTER CYRAN,

                                    Defendants.

**OPINION & ORDER**

23-cv-1858 (ER)

RAMOS, D.J.:

Boodram Dudnauth filed this putative class action against A.B.C. Carpet & Home, Inc. ("A.B.C."), ABC Holdco 1 LLC ("Holdco"), Paulette Cole, Dinesh Sewnauth, and Sylvester Cyran (collectively, "Defendants"), alleging, *inter alia*, that Defendants failed to pay him on a weekly basis and to provide him with proper wage and notice statements in willful violation of New York Labor Law ("NYLL") § 191(1-a). Dudnauth claims entitlement to damages, including attorneys' fees and costs.

Before the Court is Defendants' motion to dismiss plaintiff's sole remaining claim pursuant to NYLL § 191(1-a).[1] Doc. 54. For the reasons set forth below, the motion is DENIED.

## I.    BACKGROUND

The Court discusses only those facts necessary for disposition of the instant motion, assuming familiarity with the Opinion & Order issued on July 29, 2025 ("July 2025 Opinion"), Doc. 51 at 1–11, which recounts the factual background and procedural history of this litigation.

---

[1] In an opinion and order issued on July 29, 2025, the Court granted Defendants' motion for summary judgment on all other claims asserted. *See* Doc. 51.

### A. Factual Background[2]

Dudnauth was employed in the Rug Department of A.B.C. for approximately thirty years. Doc. 46 ¶¶ 1, 13, 13(a). Dudnauth's employment ended upon A.B.C.'s bankruptcy and subsequent dissolution in October 2021. Doc. 1 ¶ 8; Doc. 46 ¶ 1. Dudnauth was then hired by Holdco following Holdco's purchase of A.B.C. in November 2021. Doc. 46 ¶ 27.

Dudnauth worked in the Rug Department of A.B.C. as a rug flipper, stocker, and had at least some supervisory duties, though it is disputed whether Dudnauth held an official supervisor title. Doc. 46 ¶¶ 14(a), 15(a); *see also* Doc. 46 ¶ 13. He was paid bi-weekly. Doc. 1 ¶ 41.

When Dudnauth was hired by Holdco as Supervisor of Rugs, Holdco alleges that Dudnauth retained the same duties he had when he was employed by A.B.C. Doc. 46 ¶ 31. Further, Holdco alleges, and Dudnauth disputes, that "[at]t the time of hire … [Dudnauth] was informed in writing about his salary, bi-monthly nature of his pay, his employer and other information." Doc. 46 ¶¶ 29, 29(a). Dudnauth received paystubs with every paycheck from Holdco. Doc. 46 ¶ 30. Holdco terminated Dudnauth due to low rug sales in June 2022. Doc. 46 ¶ 44.

The motion for summary judgment was fully briefed on December 3, 2024. Doc. 50. On May 9, 2025, as discussed more fully below, § 198(1-a), which provides for damages in the event, *inter alia*, of a violation of § 191(1-a), was amended. In September 2025, after the Court issued the July 2025 Opinion, Defendants sent a check to Dudnauth in the amount of $175, which they contend is in full satisfaction of the sole remaining claim, the violation of NYLL § 191(1-a). Doc. 56 at 20. Defendants argue this check compensates Dudnauth with more than he can recover in the event of litigation because the amendment to NYLL § 198(1-a) would allow Dudnauth to recover only the interest

---

[2] The following facts are drawn from the allegations contained in Defendants' Local Rule 56.1 Statement, and Dudnauth's responses thereto ("Dudnauth's Response to Defendants' Rule 56.1(a) Statement"). Doc. 46. The facts recited are undisputed unless otherwise noted.

on the delayed payment of his wages for the § 191(1-a) violation – $117.51.  Doc. 55 at 13.

In relevant part, § 191(1-a) requires:

> "1. Every employer shall pay wages in accordance with the following provisions:
>
> > a.  Manual Worker. –
> > > i.  A manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned . . . "

Section 198(1-a), as amended on May 9, 2025, in relevant part, requires:

> "In any action instituted in the courts upon a wage claim by an employee . . . in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, *all reasonable attorney's fees*, prejudgment interest . . . and . . . an additional amount as liquidated damages . . . *Notwithstanding the provisions of this subdivision, liquidated damages shall not be applicable to violations of [§ 191(1-a)] of this article* where the employer paid the employee wages on a regular payday, no less frequently than semi-monthly. Such violations *shall* be subject to damages as follows:
>
> > (i)    no more than one hundred percent of the lost interest found to be due for the delayed payment of wages . . . "

N.Y. Lab. Law §§ 191(1-a)(a)(i), 198(1-a)(i) (McKinney 2025) (emphasis added).

For the purposes of the instant motion, the parties do not dispute that Dudnauth was a manual laborer and entitled to weekly pay.  *See* Doc. 55.  Defendants also do not dispute that they violated § 191(1-a) by paying Dudnauth on a bi-weekly basis.  *Id*.  As noted above, NYLL § 198(1-a) provides the remedies available to employees for violations of the NYLL, including violations of § 191(1-a).

In the prior version of § 198(1-a), employees were entitled to recover underpayment, prejudgment interest, attorneys' fees, *and* liquidated damages.  N.Y. Lab.

Law § 198(1-a) (McKinney 2024).  The availability of liquidated damages could potentially provide large monetary awards to plaintiffs for relatively minor violations of § 191(1-a).[3]  In response, in May of 2025, § 198(1-a) was amended "in relation to *limiting liquidated damages* in certain frequency of pay violations."  S.3006 – C, 2025 Leg. (N.Y. 2025).  The amended statute provides for the recovery of lost interest resulting from bi-weekly instead of weekly pay.  § 198(1-a)(i).

The parties do not dispute the accuracy of Defendants' calculation of lost interest owed to Dudnauth—$117.51.  Doc. 55 at 10–11; *see* Doc. 59.  They also do not dispute that Defendants have paid Dudnauth more than the calculated amount of lost interest by sending him a check for $175.  Doc. 55 at 13; *see* Doc. 59.  Instead, the instant dispute turns on whether the amended § 198(1-a) precludes attorneys' fees as an available remedy for violations of § 191(1-a).  If attorneys' fees are precluded, Dudnauth's remaining claim is moot, as Defendants have compensated Dudnauth with more than he could recover in the event of litigation.  Doc. 55 at 5.

### B.  Procedural History

Dudnauth filed this action on March 3, 2023, alleging wage and hour violations of the Fair Labor Standards Act ("FLSA") and NYLL.  Doc. 1.  Dudnauth also alleged age and disability discrimination in violation of the NYSHRL.  Doc. 1.  After discovery, Defendants moved for summary judgment on September 26, 2024, and the Court granted in part and denied in part Defendants' motion on July 29, 2025.  Doc. 35; Doc. 51 at 1.  Specifically, the Court granted summary judgment in favor of Defendants on each of Dudnauth's claims except the wage violation claim pursuant to § 191(1-a) of the NYLL.

---

[3] *See Vega v. CM & Associates Construction Management, LLC*, 175 A.D.3d 1144, 1146 (1st Dept. 2019) (allowing for the recovery of liquidated damages under § 198(1-a), which permits liquidated damages equal to 100% of wages found to be due, for violations of § 191(1-a).).

Doc. 51 at 29.  Defendants filed a motion to dismiss, pursuant to FRCP Rule 12,[4] on September 4, 2025. Doc. 55 at 5.  Defendants argue that the May 2025 amendment to the NYLL bars Dudnauth's ability to recover attorneys' fees, and, thus, renders the wage violation claim moot because Defendants' payment of $175 fully compensates Dudnauth if he is successful in litigation.  Doc. 55 at 5; *Id*. at 13; Doc. 56 at 20.

## II.    LEGAL STANDARDS

"[T]he legal standards of review for motions to dismiss and motions for judgment on the pleadings 'are indistinguishable.'"  *Wells Fargo Bank, National Association v. Davidson Kempner Capital Management LLC*, 32 F. Supp. 3d 436, 441 (S.D.N.Y. 2014), *aff'd sub nom. Wells Fargo Bank, National Association v. Bedford CMBS Acquisitions LLC*, 626 F. App'x 341 (2d Cir. 2015).

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Koch v. Christie's International PLC*, 699 F.3d 141. 145 (2d Cir. 2012).  The Court is not required, however, to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id*. at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  (citing *Twombly*, 550 U.S. at 556).  The plaintiff must in turn allege facts sufficient to demonstrate "more than a sheer possibility that a defendant has acted unlawfully."  *Id*.  "Threadbare recitals of the

---

[4] The Defendants do not specify if they move to dismiss under Rule 12(b)(6) or under 12(c), but they do acknowledge the legal standards for a motion to dismiss under either Rule 12(b)(6) or 12(c) are identical. Doc. 55 at 5.

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 556.  If the plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Twombly*, 550 U.S. at 570.

## III.    DISCUSSION

### A.  The Circumstances Surrounding the Amendment to NYLL § 198(1-a)

The May 2025 amendment to § 198(1-a) was enacted following a split between the First and Second Departments of the New York Appellate Division.  Specifically, in 2019, the First Department held in *Vega v. CM & Associates Construction Management, LLC* that § 191(1-a) provided a private right of action to employees for violations, and, thus, employees could recover liquidated damages for such violations.  175 A.D.3d 1144, 1146–1147 (1st Dept. 2019).  The *Vega* court held there was a private right of action for two reasons:  (1) the late payment of wages is a type of "underpayment" and, thus, remedies under § 198(1-a) are available for pay frequency violations; and (2) alternatively, there is an implied private right of action because it promotes the legislative purpose of the NYLL.  *Id*. at 1145–1147.  This was the first time the New York Appellate Division addressed whether there was a private right of action for violations of § 191(1-a).  *Espinal v. Sephora USA, Inc.*, 2024 WL 4241537, at *3 (S.D.N.Y. 2024) ("For half a decade, the First Department's decision in *Vega* was the only decision on point.").  Additionally, the *Vega* court held that liquidated damages were available for violations of § 191(1-a) due to the similarity between § 198(1-a) and the FLSA provision relating to liquidated damages.  *Id*. at 1145–1146.

Following the *Vega* decision, a flurry of § 191(1-a) cases were filed seeking liquidated damages for § 191(1-a) violations.[5]  Then, in 2024, the Second Department held, contrary to the First Department, that there was, in fact, no private right of action

---

[5] Molly A. Brooks, et. al, *Late Wage Payment Claims in New York: Vega, Grant, and NYLL § 191*, NEW YORK STATE BAR ASSOCIATION (April 11, 2024) ("The First Department held in *Vega* . . . that Section 191 of the [NYLL] allows manual workers to bring a private action . . . Ever since, numerous workers have sued their employers to recover liquidated damages for late wage payments . . .").

for § 191(1-a) claims, and, thus, liquidated damages could not be awarded. *Grant v. Global Aircraft Dispatch, Inc.*, 223 A.D. 712, 715–716 (2d Dept. 2024). The *Grant* court rejected the *Vega* court's interpretation of the plain meaning of the statute by holding that late payment of wages was not "underpayment" and rejected the idea of an implied private cause of action because there were "multiple official enforcement mechanisms for violations of [§ 191(1-a)]." *Id.* at 716–720. Finally, the *Grant* court held there could be no recovery of liquidated damages because pay frequency violations were "not equivalent . . . with nonpayment or underpayment of wages subject to collection . . . " *Id.* at 716.

Even after the *Grant* decision, district courts in the Second Circuit continued to follow *Vega* when confronted with the issue and had to predict how the New York Court of Appeals might rule on the issue, with only one court holding the *Grant* interpretation was correct. *See, e.g., Toxqui v. R&P Pizza Corp.*, 2025 WL 2430569, at *12–14 (S.D.N.Y. 2024) ("This Court finds the reasoning of the many decisions to have found that *Vega* continues to apply instructive."); *but see Galante v. Watermark Services IV, LLC*, 722 F.Supp.3d 170, 185 (W.D.N.Y. 2024) ("In light of the Second Department's well-reasoned decision in *Grant*, the Court concludes that the New York Court of Appeals would decline to find an implied private right of action for violations of § 191.").

Following the split between the First and Second Department, the New York Legislature amended § 198(1-a). The amendment expressly provides a private cause of action for violations of § 191(1-a). *See* § 198(1-a); *Garcia v. New Force Construction Corp.*, 2025 WL 2015158, at *15 (E.D.N.Y. 2025) ("As amended, NYLL § 198(1-a) now explicitly states that it provides a private cause of action for violations of [§] 191(1-a) . . . "). Additionally, the stated legislative purpose in the Senate Bill proposing the amendment was "to amend the labor law, in relation to *limiting liquidated damages* in certain frequency of pay violations." S.3006 – C, 2025 Leg. (N.Y. 2025) (emphasis added). The amendment balances the overall purpose of the NYLL to "strengthen and clarify the rights of employees and the payment of wages," *Truelove v. Northeast Capital*

*& Advisory, Inc.*, 738 N.E.2d 770, 771 (N.Y. 2000), with the financial interests of

employers who pay their manual laborers biweekly by preserving a private cause of

action for employees but limiting liquidated damages recovery for violations of § 191(1-

a).

### B. Availability of Attorneys' Fees as Damages Pursuant to NYLL § 198(1-a)

Defendants argue that NYLL § 198(1-a) now precludes an award of attorneys'

fees as damages for violations of NYLL § 191(1-a).  Doc. 55 at 9–10.  Dudnauth argues

that the amended § 198(1-a) continues to allow for the grant of reasonable attorneys' fees.

Doc. 59 at 4–5.

The question of whether attorneys' fees may be recovered pursuant to the

amended § 198(1-a)(i) for a stand-alone violation of § 191(1-a) has yet to be addressed

by either New York state or federal courts.[6]  Accordingly, the Court will interpret the

statute to ascertain the meaning of the amendment.

When determining a question of statutory interpretation, the "starting point . . . is

the statute's plain meaning, if it has one."  *United States v. Dauray*, 215 F.3d 257, 260 (2d

Cir. 2000) (citing *United States v. Piervinanzi*, 23 F.3d 670, 677 (2d Cir. 1994)); *Town of

Aurora v. Village of E. Aurora*, 116 N.E.3d 64, 68 (N.Y. 2018) ("[T]he starting point in

any case of interpretation must always be the language itself, giving effect to the plain

meaning thereof.").  However, the plain meaning "does not turn solely on dictionary

definitions of [the statute's] component words," but is also determined by "the specific

context in which that language is used, and the broader context of the statute as a whole."

*Yates v. United States*, 574 U.S. 528, 537 (2015); *Grajales v. Commissioner*, 47 F.4th 58,

---

[6] To be clear, since the amendment, various courts have granted attorneys' fees where plaintiffs prevail on claims that include other NYLL wage violations *in addition to* § 191(1-a).  *See Garzon v. Building Services, Inc.*, No. 1:24-cv-05429 (JLR), 2025 WL 1871171, at *1 (S.D.N.Y. 2025), *report and recommendation adopted*, 2025 WL 2062741 (S.D.N.Y. 2025); *Miller v. Building* Services, Inc., No. 2:24-cv-4814 (NJC) (SIL), 2026 WL 233230, at *2 (E.D.N.Y. Jan. 28, 2026).

65 (2d Cir. 2022); *Matter of Walsh v. New York State Comptroller*, 144 N.E.3d 953, 956 (N.Y. 2019).

Next, if the meaning is still unclear, courts consult the canons of statutory interpretation. *Dauray*, 215 F.3d at 262–265. Namely, lists and associated terms, statutory structure, statutory amendment, and avoiding absurdity are the canons of statutory interpretation consulted following the plain meaning of the statute. *Id.* Finally, determining the legislative intent by looking first at the statutory text, then at the circumstances surrounding the statute's enactment and the statute's legislative history can be helpful in corroborating the meaning when the plain language is ambiguous. *Town of Aurora*, 116 N.E.3d at 68; *United States v. Bulloch*, 165 F.4th 676, 683 (2d Cir. 2026); *Riley v. County of Broome*, 742 N.E.2d 98, 102 (N.Y. 2000).

Considering the plain meaning of the statute, it is clear the legislature intended to, and did, prohibit recovery of liquidated damages for violations of § 191(1-a) where the employee was paid on a bi-weekly basis, as is the case here. Doc. 1 ¶ 41. Thus, the statute could be interpreted as merely limiting the recovery of liquidated damages for such violations. Less clear, however, is whether the legislature intended to preclude attorney's fees.

Defendants attempt to argue that the maxim *expressio unius est exclusio alterius*[7] and the "notwithstanding clause" of § 198(1-a) gives the statutory language the effect of also prohibiting attorneys' fees as damages for violations of § 191(1-a). Doc. 55 at 9–10. *Expressio unius est exclusio alterius* creates the inference that what the legislature did not include was not meant to be included. *Brennan-Centrella v. Ritz-Craft Corp.*, 942 F.3d 106, 111 (2d Cir. 2019) (citing *Greene v. United States*, 79 F.3d 1348, 1355 (2d Cir. 1999)); *Colon v. Martin*, 149 N.E.3d 39, 43 (N.Y. 2020). Put another way, if the legislature explicitly excludes certain remedies, but not others, the legislature is implicitly

---

[7] "Expressio unius est exclusio alterius. The expression of one thing is the exclusion of another." *Black's Law Dictionary* (12th ed. 2024).

allowing those remedies not listed. *See id.* Further, the maxim "applies only when the statute identifies a series of two or more terms or things that should be understood to go hand in hand . . . " *Frank G. v. Board of Education*, 459 F.3d 356, 370 (2d Cir. 2006) (quoting *U.S. v. City of New York*, 359 F.3d 83, 98 (2d Cir. (2004)). Here, the only list contained in § 198(1-a) where the maxim would be applicable is the list of generally available remedies. Namely, the maxim would apply to the phrase "the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest . . . and . . . an additional amount as liquidated damages" because it lists terms that should be understood to go hand in hand. § 198(1-a). Contrary to Defendants' argument, the maxim would not be applicable to the phrase "[s]uch violations shall be subject to damages as follows: (i) no more than one hundred percent of the lost interest found to be due for the delayed payment of wages . . . " § 198(1-a)(i). This is because the phrase does not contain "a series of two or more terms that should be understood to go hand in hand." *Frank G.*, 459 F.3d at 370.

Next, Defendants argue that the "notwithstanding clause" in § 198(1-a) renders the previously listed damages options as inapplicable to violations of § 191(1-a) where the employee was paid bi-weekly. Doc. 55 at 8. A "notwithstanding clause" "supersedes any inconsistent provision of . . . law." *Matter of State of New York v. John S.*, 15 N.E.3d 287, 297 (N.Y. 2014). More specifically, "a 'notwithstanding' clause in a statute operates as an exception to the provisions of *law referenced in the clause*." *Del Terzo v. Hospital for Special Surgery*, 95 A.D.3d 551, 552 (1st Dept. 2012) (emphasis added). Thus, "notwithstanding" provisions only supersede provisions of law referenced in the "notwithstanding clause" itself. Here, the clause reads "[n]otwithstanding the provisions of this subdivision, *liquidated damages* shall not be applicable to violations of [§ 191(1-a)]," § 198(1-a) (emphasis added), which compels the conclusion that the "notwithstanding clause" specifically applies only to liquidated damages. Under this

10

interpretation, attorneys' fees continue to be available to prevailing plaintiffs as well as lost interest. [8]

Further, the context of § 198(1-a)(i) within the New York Labor Law as a whole contributes to the plain meaning of the statute. *Yates*, 574 U.S. at 537; *Dauray*, 215 F.3d at 263; *Matter of Walsh*, 144 N.E.3d at 956. Thus, case law and legislative history can be used to ascertain the meaning of an ambiguous statute. *Bulloch*, 165 F.4th at 683 ("Finally, '[we] resort to legislative history only if after consulting canons of statutory [construction], the meaning remains ambiguous.'" (quoting *United States v. Rowland*, 826 F.3d 100, 108 (2d Cir 2016)); *Matter of Walsh*, 144 N.E.3d at 956; *Town of Aurora*, 116 N.E.3d at 68.

As discussed above, after the amendment to § 198(1-a), federal courts have awarded attorneys' fees to plaintiffs who prevailed on various NYLL claims *in addition to* § 191(1-a) violations, though no federal or New York state court has squarely addressed the issue of whether attorneys' fees are available for plaintiffs who prevail solely on § 191(1-a) claims. *See Garzon*, 2025 WL 1871171, at *11; *Miller*, 2026 WL 233230, at *2.

For example, in *Garzon*, the court interpreted the limitation on damages created by the "notwithstanding clause" as applicable only to liquidated damages for § 191(1-a) claims, not necessarily to the availability of the other forms of damages listed in § 198(1-a) (underpayment, attorney's fees, and prejudgment interest). The *Garzon* court stated "[a] 2025 amendment to [§] 198(1-a) created *an exception to the liquidated damages rule* for violations of the timeliness of wage payments provision. Under the revised statute, *liquidated damages are not available* when an employer pays wages 'on a regular payday, no less frequently than semi-monthly' and is a first-time violator." *Garzon*, 2025

---

[8] Defendants' argument, raised briefly in their Reply Memorandum, that the fact the legislature changed the interest calculation in § 198(1-a)(i) shows the legislature intended to remove attorneys' fees as a remedy is unavailing. Doc. 60 at 6. A difference in the method of interest calculation for lost interest damages is not related to whether attorneys' fees are available.

WL 1871171 at *10 (quoting § 198(1-a)) (emphasis added).  In *Garzon*, in addition to a § 191(1-a) pay frequency claim, the plaintiff prevailed on other claims under the NYLL, including unpaid minimum wage, unpaid overtime premium wages, and unpaid spread-of-hours wages claims.  *See Garzon*, 2025 U.S. WL 1871171 at *8–11.  Ultimately, the *Garzon* court awarded the plaintiff $149.15 for the § 191 violation, and $8,414.50 in attorneys' fees because "the NYLL permit[s] a successful plaintiff to recover reasonable attorneys' fees and costs."  *Garzon*, 2025 WL 1871171 at *17–18; *see* §§ 198, 663.  In doing so, the *Garzon* court did not segregate out, or otherwise reduce, the attorneys' fees incurred in connection with the prevailing § 191(1-a) claim.  *See id.*

In *Miller v. Building Services*, where the plaintiff initially prevailed on a § 191(1-a) claim and an unpaid overtime wage claim,[9] following the May 2025 amendment, the court converted an award of damages for a violation of § 191(1-a) from $108,313.93 in liquidated damages to $332.36, the amount limited just to lost interest.  *Miller*, 2026 WL 233230 at *2.  The *Miller* court found that "because Defendants paid Miller bi-weekly . . . the *only* available damages for Miller to recover on his § 191 claim are interest payments on the untimely payment of $108,313.93 in wages—not the $108,313.93 in liquidated damages that I awarded in the July 11, 2025 Order."  *Id.*   However, the *Miller* court only addressed the amendment's limitation on the previously awarded liquidated damages.  *Id.*  Importantly, the court in *Miller* did not reduce the previously awarded attorneys' fees when amending the § 191(1-a)-related damages calculation.  *Id.* at n.1.

Notably, the *Miller* court observed that "[a]lthough Miller does not raise any issue with respect to the attorney's fees awarded in the Court's July 11, 2025 Order, the Court notes that as a result of the reduction in damages for failure to timely pay wages, the attorney's fees as a proportion of damages has grown significantly.  Nonetheless, the *fee*

---

[9] The initial award was issued in *Miller v. Building Services*, 2025 WL 1908802, at *4 (E.D.N.Y. 2025), based on Magistrate Judge Locke's report and recommendation in *Miller v. Building Services*, 2025 WL 959081 (E.D.N.Y. 2025).

*award remains unchanged* because it was calculated using the lodestar method and 'calculating attorneys' fees as a proportion of damages runs directly contrary to the *purpose of fee-shifting statutes*: assuring that . . . claims of modest cash value can attract competent counsel.'" *Id.* at n.1 (quoting *Millea v. Metro-North Railroad Co.*, 658 F.3d 154, 169 (2d Cir. 2011) (emphasis added).

Finally, even assuming, *arguendo*, the statute is ambiguous, the legislative history and circumstances surrounding the enactment of the statute corroborate the interpretation that the legislature intended to only limit the recovery of liquidated damages for pay frequency claims. Defendants' argument that attorneys' fees were precluded for § 191(1-a) violations because the legislature "wanted to ease the burden on employers," Doc. 60 at 4, is unsupported by the circumstances surrounding the amendment and its legislative history. As discussed above, the legislature amended § 198(1-a) to better balance the interests of employees and employers alike in the wake of the Department split created by *Vega* and *Grant*, and its explicit legislative intent is "to amend the labor law, in relation to *limiting liquidated damages* in certain frequency of pay violations . . . " S.3006 – C, 2025 Leg. (N.Y. 2025) (emphasis added). There is no mention of limiting the recovery of attorneys' fees anywhere in the Senate Bill. *Id.* If Defendants' argument was accepted, the purpose of a fee-shifting statute like the NYLL, which is "assuring that claims of modest cash value can attract competent counsel," would be frustrated. *Miller*, 2026 WL 233230 at n.1 (quoting *Millea*, 658 F.3d at 169); *Dauray*, 215 F.3d at 265.

Additionally, as noted in *Vega*, the New York Legislature enacted the NYLL with the general intent to mirror the FLSA, which courts have considered important in interpreting the meaning of the NYLL. *See Vega*, 175 A.D.3d at 1145–1146; N.Y. Spons. Memo., 2009 A.B. 6963, Leg. 232, Reg. Sess. (April 8, 2009) (2009 amendment to the NYLL is designed to "conform New York law to the [FLSA] and the laws of other states that allow workers liquidated damages once they establish that their employer violated

13

the wage law"); *see, e.g.*, *Ramos v. Baldor Specialty Foods, Inc.*, 2011 WL 2565330 at n.3 (S.D.N.Y. 2011).

In that regard, it is important to note that, when addressing awards of attorneys' fees for claims of "modest value" under the FLSA, the Second Circuit has held that attorneys' fees "'may not be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation'" *Fisher v. SD Protection Inc.*, 948 F.3d 593, 604 (2d Cir. 2020) (quoting *Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005)); *see, e.g*, *Hui Luo v. L & S Acupuncture, P.C.*, 649 Fed.Appx 1, 1 (2d Cir. 2016) (granting $64,038.00 in attorneys' fees and $4,830.67 in costs when the plaintiff only recovered $4,130.75 in damages for violations of the FLSA and NYLL).  Given that the NYLL was designed to conform New York law with the FLSA, there is no basis to conclude that the NYLL, even as amended in May 2025, should be interpreted as limiting the recovery of attorneys' fees for claims of "modest value," such as violations of § 191(1-a).

The plain meaning, including the context of § 198(1-a) as a whole, the legislative history, and the circumstances surrounding the enactment of the statute compel the conclusion that the amendment to § 198(1-a) was intended to limit liquidated damages only, and does not preclude the availability of attorneys' fees.  Thus, Dudnauth is entitled to seek attorneys' fees, and his remaining § 191(1-a) claim is not moot.

## IV.    CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is denied.  The parties are directed to appear for a status conference on April 22, 2026 at 11:30 a.m. at the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York 10007, Courtroom 619.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 54. It is SO ORDERED.

14

Dated:    March 30, 2026
          New York, New York

_____
          EDGARDO RAMOS, U.S.D.J.